UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> V. ) <br> ) <br> ROBERT LEWIS SIMPSON, III, and ) <br> TAYLOR DAWNE MITCHUSON, ) <br> ) <br> Defendants. ) | Criminal Action No. 5: 18-056-DCR <br><br> **MEMORANDUM OPINION <br> AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

## I. Introduction

Defendant Marion Leaves Brown, III, faced a lengthy sentence after entering a guilty plea on July 28, 2017. Brown had sold a combination of heroin and fentanyl to a woman approximately four months earlier, which resulted in her overdosing on the substances. Brown's then-girlfriend, Defendant Taylor Dawne Mitchuson, assisted Brown in a subsequent sale to an individual cooperating with police in the investigation of Brown's drug distribution activities. However, she was not charged in his subsequent indictment.[1]

---

[1] Paragraph 11 of Brown's Presentence Investigation Report ("PSR") in Lexington Criminal Action No. 5: 17-065, styled *United States v. Marion Leaves Brown, III,* states, in part:

> . . . on April 12, 2017, a cooperating source (CS) assisted LPD officers in making a controlled purchase of heroin from Brown. . . . The CS was provided with U.S. currency by police for the purchase, along with covert audio and video recording equipment. Undercover detectives followed the CS to an address on Bainbridge Drive in Lexington, which had been identified as Brown's residence.

Several days later, Brown hatched a scheme to escape from the Grayson County Detention Center before his federal sentencing hearing which had been set for November 17, 2017. Brown enlisted Taylor and two others, Defendants Robert Lewis Simpson and Destini Samantha Chadwell, to assist in the escape. Taylor was used to coordinate the purchase of supplies for the break-out. Simpson and his girlfriend, Destini Chadwell, then attempted to assist Brown in his escape from outside the detention center. The plan failed. Brown, Mitchuson, Simpson and Chadwell were later indicted under 18 U.S.C. § 371 (conspiracy to escape from federal custody). With the exception of Brown, the remaining defendants entered guilty pleas and testified as government witnesses during Brown's trial which was held on August 15, 2018.

Both Simpson and Mitchuson have objected to the guideline calculations contained in their respective PSRs based on the Probation Officer's the failure to include recommended reductions for their respective roles in the offense. Mitchuson claims that she is entitled to receive either a four- or two-level reduction as a minimal or minor participant under Section 3B1.2 of the United States Sentencing Commission, *Guidelines Manual*, § 3B1.2 (Nov. 2018). Simpson asserts that he should receive a two-level adjustment as a minor participant.

---

. . . The CS advised that a female subject believed to be Brown's girlfriend, Taylor Mitcherson, handed the CS the suspected heroin, but that Brown was present and advised the CS regarding how much of the substance to ingest. Brown also cautioned the CS "not to overdose." The purchased substance was later sent to the Kentucky State Police Forensics Lab for analysis. It was confirmed through analysis to be .46 grams of fentanyl.

Mitchuson will be granted partial relief (*i.e.*, a two-level reduction) based on her role in the offense. However, the Court cannot conclude that Simpson is entitled to a role reduction. His objection, therefore, will be denied.

## II.  USSG § 3B1.2

The United States Sentencing Commission's 2018 *Guidelines Manual* is applicable to Mitchuson's and Simpson's sentencing proceeding and to their objections to their respective guideline calculations. *See* USSG § 1B1.11, p.s. (The Court shall use the Guidelines Manual in effect on the date that the defendant is sentenced unless such application would violate the *ex post facto* clause of the United States Constitution.) While both defendants begin with a Base Offense Level 13 in calculating their respective guideline ranges, the probation officer responsible for preparation of the PSRs does not assign to either defendant an adjustment for his or her role in the offense.

Section 3B1.2 (Mitigating Role) applies to downward role adjustments. It simply states:

> Based on the defendant's role in the offense, decrease the offense level as follows:
>
> (a)   If the defendant was a minimal participant in any criminal activity, decrease by **4** levels.
>
> (b)   If the defendant was a minor participant in any criminal activity, decrease by **2** levels.
>
> In cases falling between (a) and (b), decrease by **3** levels.

The application notes to this section of the guidelines provide useful definitions and instructions in determining who is entitled to a mitigating role adjustment and the extent

of any adjustment. First, the defendant seeking the adjustment must be "substantially less culpable than the average participant in the criminal activity." *See* USSG § 3B1.2, comment. (n. 3(A)).

Second, the decision regarding whether to apply a role reduction is a fact-based determination. In making this decision, the Court considers the totality of circumstances, including, but not limited to:

    (i)    the degree to which the defendant understood the scope and structure of the criminal activity;

    (ii)    the degree to which the defendant participated in planning or organizing the criminal activity;

    (iii)    the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

    (iv)    the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

    (v)    the degree to which the defendant stood to benefit from the criminal activity.

*See* USSG 3B1.2, comment. (n. 3(C)). And as this application note further indicates, the fact that a defendant may have performed an essential or indispensable role in not determinative. Instead, the Court must look to whether that individual is substantially less culpable than the average participant in the criminal activity.[2]

---

[2] This section of the guidelines was amended, effective November 1, 2015, due, in part, to the United States Sentencing Commission's concern that the mitigating role adjustment was applied inconsistently and more sparingly than intended. (*See* Amendment 794, USSG App. C (Nov. 2015).)

## III. Relevant Facts

Here, for purposes of USSG § 3B1.2, the participants include all those charged as defendants: Brown, Simpson, Mitchuson and Chadwell. Defendants Simpson and Mitchuson testified as government witnesses during Brown's jury trial. Simpson testified that he became addicted to drugs around 2014. He first met Brown while they were incarcerated around 2015. They became friends and later "hung out," "messed with drugs," and "used drugs" together. Simpson was still using drugs and was still addicted during the time that Brown was being held at the Grayson County Detention Center on federal charges for distributing fentanyl which resulted in serious bodily injury and for possessing a firearm by a convicted felon. (*See* Lexington Criminal Action No. 5: 17-65-DCR.) Brown sought out Simpson to assist in his planned escape from custody in late August or early September 2017.

Simpson was asked to purchase supplies with money that Brown would provide. More specifically, Simpson was asked to purchase a hacksaw, torch and sledge hammer at a local Wal-Mart store in Nicholasville, Kentucky. Additionally, Simpson was directed to take these items to the Grayson County Detention Center and, following Brown's instructions, weaken an outside window of Brown's cell and then provide him with supplies to enable Brown's escape from the facility. Simpson readily agreed. Although the exact amount of his expected payment is not clear, Simpson expected to receive $4,000.00 to $4,500.00 for his efforts.[3]

---

[3] Simpson testified that he was "dope sick" at this time and needed money to purchase heroin.

After purchasing the necessary items locally, Simpson and Chadwell traveled to Grayson County. Chadwell drove the vehicle while Simpson was in constant communication with Brown during the trip. Simpson and Chadwell also purchased a bucket on their way to the detention center because Simpson was not tall enough to reach the window of Brown's cell. The bucket was used as a stool which allowed Simpson to strike the window of the cell with the sledge hammer that had been purchased earlier. Upon Chadwell and Simpson's arrival at the detention center, Brown used a flame on the inside of the window to identify his cell.[4]

Although Simpson and Chadwell intended to hold up at a nearby hotel and await Brown's escape, things did not go as planned. The window to the cell did not break as expected, and Simpson's use of the sledge hammer drew attention to his actions. Simpson was also concerned upon seeing security cameras in the area and decided to leave. As a result, Simpson and Chadwell abandoned their initial efforts, and Brown was eventually moved to another area of the detention facility.

Simpson and Brown were in communication the following day. According to Simpson, Brown called to suggest that Simpson purchase a grinder which would be used to cut the bars to the window of his cell. Simpson declined. Shortly thereafter, Brown confessed to detention officers and implicated Simpson in his escape efforts.

As the above summary demonstrates, Mitchuson's efforts were more limited than the actions undertaken by Simpson. In addition to assisting Brown in drug distribution

---

[4] It appears that Chadwell also acted as a lookout while Simpson attempted to break the window to Brown's cell.

activities in Lexington, Brown is the father of Simpson's young child. Mitchuson testified that, as of the time of the trial, she had "been with" Brown for approximately two to three years.

It appears that Mitchuson was in regular contact with Brown via telephone while he was being held in the Grayson County Detention Center. According to her trial testimony, Mitchuson spoke with Brown approximately ten times each day while he was incarcerated at Grayson County as a federal detainee. Mitchuson received instructions during these calls regarding Brown's escape intentions. Brown arranged for money to be sent to a local Jessamine County Wal-Mart for purchase of the items to be used in the escape attempt.[5] Mitchuson and Simpson were involved in obtaining the cash (approximately $150.00) and purchasing the supplies. Mitchuson, however, did not accompany Simpson and Chadwell on the trip to Grayson County and did not physically participate in Brown's escape efforts.

Like Simpson, Mitchuson was using drugs (*i.e.*, heroin and cocaine) at the time of the escape attempt. However, unlike Simpson, she did not expect to receive payment for her assistance. Instead, she testified that she simply wanted to see Brown.

Under the facts outlined above, the Court concludes Brown planned most of the activities and actions of his co-defendants. He then relayed instructions through Mitchuson (initially) and Simpson (subsequently). Mitchuson was involved early but did not stand to benefit financially. However, her motive for assisting Brown was as strong, if not stronger,

---

[5] It appears that the money could be picked-up at any Wal-Mart location. Mitchuson, however, chose the Jessamine County location which was close to where she lived and where she assisted in planning the escape with her co-defendants.

than the remaining defendants. Conversely, Simpson stood to benefit financially (*i.e.*, he expected to receive between $4,000 to $4,500) and his involvement was hands-on.

While following Brown's instructions, Simpson obtained supplies, traveled to Grayson County with Chadwell, and attempted to physically break the window at the detention facility. In addition to understanding the scope and structure of the criminal activity, he participated to a degree in planning and organizing it. His actions were greater than those of the average participant (Chadwell). And he certainly is not "substantially less culpable" than the average participant.

A closer question is presented regarding Mitchuson. The facts support a finding that she understood the scope and plan. She was fully engaged from the very beginning and had a strong motive for assisting Brown. But motive is not dispositive when determining whether a role reduction is warranted.

Mitchuson did not benefit financially and did not carry out the plan in the same manner as Simpson and Chadwell. Likewise, the Court is unable to conclude, based on a preponderance of the evidence, that she was instrumental in planning and/or coordinating the escape. Instead, she acted as a conduit relaying initial information (and a small amount of cash) from Brown to others. Under these circumstances, the Court concludes that, while Mitchuson is less culpable than most other participants, her role cannot be described as minimal. Therefore, the Court will apply two-level role adjustment to Mitchuson's guideline calculation as a minor participant under USSC § 3B1.2(b).

### IV. Conclusion

Based on the foregoing discussion and analysis, it is hereby

**ORDERED** as follows:

1. Defendant Robert Simpson's objection to paragraph 23 of his Presentence Investigation report, declining to award either a four- or two level reduction as a minimal or minor participant in the criminal activity charged in this case is **OVERRULED**.

2. Defendant Taylor Mitchuson's objection [Record No. 74] to paragraph 23 of her Presentence Investigation report, declining to award a four-level reduction as a minimal participant in the criminal activity charged in this case is **OVERRULED**. However, her objection to the failure to award a two-level reduction as a minor participant in the criminal activity charged in this case is **SUSTAINED**.

Dated: November 5, 2018.

Signed By:
*Danny C. Reeves*
United States District Judge